## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

HERMAN DHADE, as an individual and on
behalf of all others similarly situated,

         Plaintiff,

v.

HUNTINGTON LEARNING CENTERS,
INC., a Delaware corporation,

         Defendants.

Civil Action File No. _____

## COMPLAINT

Plaintiff, Herman Dhade, by and through his undersigned counsel, hereby files this Complaint, individually, and on behalf of all others similarly situated persons, against Defendant, Huntington Learning Centers, Inc., as follows:

## INTRODUCTION

1.     This is a proposed class action for injunctive relief, attorneys' fees, and statutory punitive damages to remedy systematic violations of the Equal Credit Opportunity Act (ECOA).

## PARTIES

2.     Plaintiff is a natural person who resides in the State of Michigan.

3.     Defendant Huntington Learning Centers, Inc. is Delaware corporation that sells Huntington Learning Center® franchises.  Defendant Huntington Learning Centers, Inc. may be served by delivering a copy of this Complaint and the Summons to The Corporation Trust Company, at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1691e(f).

5.     This Court has jurisdiction over Defendant Huntington Learning Center, Inc.'s person as it is a citizen of the State of Delaware.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1).

## COMMON FACTUAL ALLEGATIONS

7.     Franchising is regulated by the Federal Trade Commission pursuant to the 16 C.F.R. Part 436.  Franchisors, like Defendant, are required to provide prospective franchisees with a document disclosing material information about the franchise investment—*i.e.*, a "franchise disclosure document."  *See* 16 C.F.R. §§ 436.2(a), 436.3 – 436.5.

8.     Defendant's Franchise Disclosure Document dated April 5, 2017 (the "2017 FDD") states that non-party Huntington Learning Corporation may extend secured credit to new Huntington Learning Center® franchisees (other than those in the State of California).  Item 10 of the 2017 FDD states in pertinent part as follows:

> [Defendant] or [Huntington Learning Corporation] will lend new franchisees up to $100,000 … to open their First Franchised Business. …
> You must request financing before opening the Franchised Business and be approved by the lender (the "Lender"), who will be Huntington Learning Corporation, except in California, where it will be [Defendant.]  You must meet the Lender's credit and other standards ….
> Financing is at 7% interest per annum over a 60-month term, as follows:
> - No payments for the initial six full calendar months of the term of the loan;
> - Interest-only payments for the next six full calendar months of the term of the loan; and
> - Interest and principal payments begin on the first day of the 13th full calendar month of the term of the loan.
>   …
> If you obtain financing from the Lender, you must sign the Lender's negotiable promissory note (the "Promissory Note") in the form attached as Exhibit S and the security agreement (the "Security Agreement") in the form attached as Exhibit T.  …  The Security Agreement provides that financing will be secured by the Franchise Agreement, related agreements, and all Franchised Business assets....

[*See* Doc. 1-1 at pp. 17-18.]

9.      As Item 10 in the 2017 FDD states, the "Collateral" for such credit is "each and all Franchise Agreements, [all other written agreements with Defendant], Franchised Businesses, and Business Assets …."  [See Doc. 1-1, Exhibit T, § 2.6.]

10.      The 2017 FDD makes clear that a spousal guaranty of such credit was mandatory. The fourth page of the 2017 FDD states in pertinent part as follows:

> THE FRANCHISEE'S SPOUSE MUST SIGN A PERSONAL GUARANTEE MAKING SUCH SPOUSE JOINTLY AND SEVERALLY LIABLE FOR THE OBLIGATIONS UNDER THE FRANCHISE AGREEMENT, WHICH ALSO PLACES THE SPOUSE'S PERSONAL ASSETS AT RISK.  YOU MIGHT WANT TO CONSIDER THIS WHEN MAKING A DECISION TO PURCHASE THIS FRANCHISE OPPORTUNITY.
>
> YOUR SPOUSE MUST SIGN A DOCUMENT THAT MAKES YOUR SPOUSE LIABLE FOR YOUR FINANCIAL OBLIGATIONS UNDER THE FRANCHISE AGREEMENT, EVEN THOUGH YOUR SPOUSE HAS NO OWNERSHIP INTEREST IN THE BUSINESS.  THIS GUARANTEE WILL PLACE YOU AND YOUR SPOUSE'S MARITAL AND PERSONAL ASSETS, PERHAPS INCLUDING YOUR HOUSE, AT RISK IF YOUR FRANCHISE FAILS.

[*See* Doc. 1-1 at unnumbered prefatory page.]

11.      Similarly, Item 15 of the 2017 FDD states as follows:

> All spouses must guarantee personally your obligations under the Franchise Agreement ….

[*See* Doc. 1-1 at p. 37.]

12.      Exhibit A to the 2017 FDD is Defendant's form Franchise Agreement (the "2017 Franchise Agreement").  Paragraph 6.11.1 of the 2017 Franchise Agreement states in pertinent part as follows:

> You shall pay promptly when due and without prior demand or notice all fees and amounts due and payable to [Defendant], [and] [its] affiliates … under this Agreement …; ***and any monies advanced by [Defendant] or [its] affiliates to you … under this Agreement or any other agreement between you … and [Defendant] or any of [its] affiliates.***

[*See* Doc. 1-1, Exhibit A (emphasis supplied).]

13.    Non-party Huntington Learning Corporation is an affiliate of Defendant.  [*See* Doc. 1-1 at p. 1.]

14.    Exhibit A to the Franchise Agreement is Defendant's form Guarantee Agreement (the "2017 Guaranty").  Paragraph 4 of the 2017 Guaranty states in pertinent part:

> Upon our demand, each Guarantor will immediately make payment required of the Franchisee under the Franchise Agreement to [Defendant] … and any other individual or legal entity to whom the Franchisee owes any payment. …

[*See* Doc. 1-1, Exhibit A, Exhibit A.]

15.    In other words, if non-party Huntington Learning Corporation extended credit to a Huntington Learning Centers® franchisee who was married, a spousal guaranty of that obligation was mandatory.

16.    Like the 2017 FDD, Defendant's 2016 Franchise Disclosure Document (the "2016 FDD") states that non-party Huntington Learning Corporation may extend secured credit to new franchisees (other than those in the State of California). [*See* Doc. 1-2 at pp. 15-16.]

17.    Like the Security Agreement in the 2017 FDD, the Security Agreement in the 2016 FDD defines the "Collateral" securing that credit as the franchised business assets—not the franchisee's personal assets.  [*See* Doc. 1-2, Exhibit T, § 2.6.]

18.    Like the 2017 FDD, the 2016 FDD also makes clear that a spousal guaranty of any credit was mandatory.  [*See* Doc. 1-2 at unnumbered prefatory page and p. 37.]

19.    Exhibit A to the 2016 FDD is Defendant's form Franchise Agreement (the "2016 Franchise Agreement").  Like Paragraph 6.11.1 in the 2017 Franchise Agreement, Paragraph 6.12.1 of the 2016 Franchise Agreement states:

> You shall pay promptly when due and without prior demand or notice all fees and amounts due and payable to [Defendant], [and] [its] affiliates … under this

4

> Agreement …; ***and any monies advanced by [Defendant] or [its] affiliates to you … under this Agreement or any other agreement between you … and [Defendant] or any of [its] affiliates.***

[*See* Doc. 1-2, Exhibit A (emphasis supplied).]

20.    Like the 2017 FDD, the 2016 FDD identifies non-party Huntington Learning Corporation as an affiliate of Defendant.  [*See* Doc. 1-2 at p. 1.]

21.    Exhibit A to the 2016 Franchise Agreement is Defendant's form Guarantee Agreement (the "2016 Guaranty").   Like the 2017 Guaranty, the 2016 Guaranty states in pertinent part:

> Upon our demand, each Guarantor will immediately make payment required of the Franchisee under the Franchise Agreement to [Huntington Learning Center, Inc.] … and any other individual or legal entity to whom the Franchisee owes any payment. …

[*See* Doc. 1-2, Exhibit A, Exhibit A.]

## INDIVIDUAL FACTUAL ALLEGATIONS

22.    At all relevant times, Plaintiff was married to non-party Kirandeep Kaur and resided in the State of Michigan.

23.    In or around March 2017, Plaintiff began discussions with Defendant about entering into a franchise relationship.

24.    Neither Plaintiff nor non-party Kaur intended for non-party Kaur to have any ownership of or involvement in operating any Huntington Learning Center® franchise.

25.    On or about April 5, 2017, Plaintiff submitted a "Huntington Franchise Application" (the "Application") to Defendant.  A true and correct copy of the Application, less redactions, is filed as Doc. 1-3.

26.    The Application asked "Will you invest in the franchise yourself? or with a partner?"  Plaintiff responded "Self."  [*See* Doc. 1-3.]

27.     The Application stated: "We offer in house financing of up to $100K with no payments for the first six months, an annual interest of 8% and a 60 month term to borrowers who meet our credit and other standards."  When asked "Would you like to discuss our in-house financing option with us?," Plaintiff responded "Yes."  [*See* Doc. 1-3.]

28.     On or about April 6, 2017, Defendant supplied Plaintiff with the 2017 FDD.

29.     On or about April 26, 2017, Janet Diaz, Defendant's Director for Franchise Development, sent Plaintiff "Huntington Learning Centers, Inc.'s In-House Financing Terms" and a "Request for Huntington Financing."  A true and correct copy of the transmittal email with attachments is filed as Doc. 1-4.

30.     "Huntington Learning Centers, Inc.'s In-House Financing Terms" included the following term: "Loan is secured by all of borrower's franchise agreements and all Center assets."  [*See* Doc. 1-4.]

31.     On or about April 28, 2017, Plaintiff told Ms. Diaz in pertinent part as follows:

I was reading the FDD in greater detail.  I just noticed that is says my wife has to sign a personal guarantee?  She will not be involved in the business.  Does she still need to sign?

32.     That same day, Ms. Diaz responded "Yes she will need to sign absolutely."  A true and correct copy of this email chain is attached hereto as Doc. 1-5.

33.     On or about June 8, 2017, Plaintiff submitted a "Request to be Awarded a Huntington Learning Center Franchise" (the "Request") to Defendant along with a request that non-party Kaur be exempted from any mandatory personal guaranty.  A true and correct copy of this email communication is filed as Doc. 1-6.

34.     The Request stated the Huntington Learning Center® franchise would be purchased by companies wholly-owned by Plaintiff.  [*See* Doc. 1-6.]

35.    Non-party Kaur never applied for or requested a Huntington Learning Center®️ franchise.

36.    On or about June 13, 2017, Ms. Diaz responded to the Request by sending Plaintiff an email purporting, in part, to be from Lisa Merry, Defendant's Chief Operating Officer, stating, in pertinent part: "Herman must have the standard paperwork and signatures to proceed."  A true and correct copy of this email is attached as Doc. 1-7.

37.    Non-party Kaur refused to sign the 2017 Guaranty and, on or about June 14, 2017, Plaintiff informed Defendant as much.

38.    In response, on June 20, 2017, Ms. Diaz sent Plaintiff a "Limited Guarantee" for non-party Kaur that purported to cap the principal amount of her monetary obligations at $35,000.  Like the Guaranty, the "Limited Guarantee" stated in pertinent part:

> Upon our demand, Guarantor will immediately make each payment required of the Franchisee under the Franchise Agreement to [Defendant] and … any other individual or legal entity to whom the Franchisee owes any payment.

A true and correct copy of this email with the attached "Limited Guarantee" is filed as Doc. 1-8.

39.    Non-party Kaur refused to sign the Guaranty and, as a result, on or about June 25, 2017, Plaintiff withdrew his application for a Huntington Learning Center®️ franchise and did not submit the "Request for Huntington Financing."

## CLASS ACTION FACTUAL ALLEGATIONS

40.    This action is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) and (3).

41.    The class definition(s) may depend upon the information obtained throughout discovery.  Notwithstanding, at this time, Plaintiff seeks certification of the claims and certain issues in this action on behalf of a class of individuals defined as:

All prospective applicants, personally or on behalf of a legal entity, that, within five years prior to service of this Compliant, were reasonably discouraged from applying for secured credit with Huntington Learning Centers, Inc. and/or from Huntington Learning Corporation because of written statements by Huntington Learning Centers, Inc. that a spousal guaranty of that credit was required, less and except prospective applicants (a) that would have jointly applied for such credit with his or her spouse; (b) whose spouse had an ownership interest in the legal entity (if any) that would have applied for credit; and (c) whose putative divorce would, at the relevant time, be governed by the laws of Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington or Wisconsin.

42.    Plaintiff reserves the right to amend the definition of the Class if further information and discovery indicates that the definition of the Class should be narrowed, expanded or otherwise modified.

43.    All members of the Class were and are similarly affected by Defendant's conduct, as alleged herein, and the relief sought herein is for the benefit of Plaintiff and the members of the Class.

### A.    Numerosity.

44.    Plaintiff alleges upon information and belief that his experience was common.

45.    The 2017 FDD states Defendant had 219, 224, and 237 franchisees at the end of 2014, 2015, and 2016 respectively.  [*See* Doc. 1-1 at 51.]

46.    Plaintiff alleges upon information and belief that Defendant added numerous additional franchised businesses in 2017.

47.    Plaintiff alleges upon information and belief that numerous Huntington Learning Center® franchises are within the Class. Per Defendant's advertisement on the Franchise Business Review, "While many of our new franchise owners self-fund or use third-party lending sources, some elect to finance through us." [*See* https://topfranchises .franchisebusinessreview.com/profile/huntington-learning-center/.]

48.     Plaintiff alleges upon information and belief that numerous prospective Huntington Learning Center® franchises are within the Class.  A reasonable person would not apply for credit if a spousal guaranty of same was required regardless of the putative applicant's creditworthiness.

**B.     Common Questions of Law and Fact Predominate.**

49.     There are numerous questions of law and fact common to Plaintiff, on the one hand, and the other members of the Class, on the other hand, that predominate over questions affecting only individual members, including:

(a)     Whether Defendant was a "creditor";

(b)     Whether Plaintiff and the other members of the Class were prospective "applicants";

(c)     Whether Plaintiff and the other members of the Class were prospective joint applicants;

(d)     Whether Plaintiff and the other members of the Class were married when they would have applied for credit;

(e)     Whether Plaintiff and the other members of the Class would be governed by the law of Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington or Wisconsin in a putative divorce proceeding at the relevant time;

(f)     Whether the spouse(s) of Plaintiff and the other members of the Class had an ownership interest in the legal entity (if any) that would have applied for credit;

(g)     Whether Defendant made written statements to Plaintiff and other members of the Class that discouraged credit application(s);

        (h)      Whether a reasonable person would have been discouraged from applying for credit because of Defendant's written statements;

        (i)      Whether this discouragement was on a prohibited basis—*i.e.*, whether Defendant stated, in writing, credit would not be extended absent a guarantee from the applicant's spouse;

        (j)      Whether Defendant had any standards of creditworthiness and, if so, whether Defendant made any individualized inquiry as to the creditworthiness of applicants;

        (k)      Whether Plaintiff and the other members of the Class were prospective applicants for secured credit;

        (l)      Whether Defendant could have reasonably believed spousal guarantees were necessary to make the property being offered as security available to satisfy the applicant's debt in the event of default; and

        (m)      Whether Defendant's failure to comply with the ECOA was frequent, persistent, grossly negligent and/or intentional within the scope of 15 U.S.C. § 1691e(b).

## C.    Typicality.

    50.    The claims asserted by Plaintiff in this action are typical of the claims of the other members of the Class as the claims arise from the same course of conduct by Defendant, and the relief sought is common to the other members of the Class.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

## D.    Adequacy.

    51.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is an adequate representative of the Class because his interests do not conflict with the

interests of the members of the Class he seeks to represent, and he has retained competent and experienced counsel.

**E.    Predominance and Superiority of Class Action.**

52.    The prerequisites to maintaining a class action pursuant to Rule 23(b)(3) are met because questions of law and fact common to each member of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

53.    A class action is superior to other available means for the fair and efficient adjudication of this controversy.    Individual joinder of the members of the Class is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.    Each member of the Class is entitled to recover, at a minimum, statutory punitive damages pursuant to 15 U.S.C. § 1691e(b).

54.    Moreover, because the actual damages suffered and/or the statutory punitive damages available to individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest would be served by addressing this matter as a class action.    Class action treatment would allow those persons similarly situated to litigate their claims in an efficient manner consistent with judicial economy.

55.    Plaintiff is unaware of any difficulties in managing this case that would preclude class action status.

**F.    Injunctive Relief.**

56.     Certification is also appropriate under Rule 23(b)(2) because Defendant acted, and is acting, on grounds generally applicable to the Class, thereby making the injunctive relief sought on behalf of the Class appropriate.  Further, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## COUNT I: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

57.     The allegations in Paragraphs 1 through 56 of the Complaint are incorporated by reference herein.

58.     15 U.S.C. § 1691b(a) authorizes the Bureau of Consumer Financial Protection (the "Bureau") to promulgate regulations to carry out the purposes of the ECOA.

59.     Pursuant to this authority, the Bureau promulgated 12 C.F.R. § 1002.7(d)(1), which prohibits a creditor from requiring a spousal guaranty simply because the applicant has a spouse.

60.     This protection applies to persons who requested credit.  However, in keeping with the same purpose—to ensure the availability of credit on a non-discriminatory basis—the Bureau also promulgated 12 C.F.R. § 1002.4(b).  That regulation states in full as follows:

> A creditor shall not make any oral or written statement, in advertising or otherwise, to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application.

61.     15 U.S.C. § 1691e provides that any creditor who fails to comply with any requirement imposed under the ECOA may be subject to civil liability.

62.     12 C.F.R. § 1002.4(b) is a requirement imposed under the ECOA, violation of which gives rise to civil liability.

63.    Defendant is a "creditor" because, in the ordinary course of business, it regularly refers applicants or prospective applicants for credit to its affiliate, Huntington Learning Corporation.  *See* 12 C.F.R. § 1002.2(l).

64.    Plaintiff alleges upon information and belief that Defendant is a "creditor" because it regularly arranges for the extension, renewal, and/or continuation of credit to Huntington Learning Center® franchisees by its affiliate, Huntington Learning Corporation.  *See* 15 U.S.C. § 1691a(e).

65.    Defendant is a "creditor" because it regularly extends, renews, and/or continues credit to Huntington Learning Center® franchisees in the State of California.  *See* 15 U.S.C. § 1691a(e).

66.    Plaintiff and all other members of the Class were prospective applicants within the meaning of 12 C.F.R. §§ 1002.2(e) and 1002.4(b).

67.    Neither Plaintiff nor any other member of the Class was a prospective joint applicant.

68.    Plaintiff and all other members of the Class were married when they would have applied for credit.

69.    Neither Plaintiff nor any other member of the Class would have been governed by the laws of Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington or Wisconsin in a putative divorce proceeding at the relevant time.

70.    Neither Plaintiff's spouse nor any other spouses of the other member of the Class had an ownership interest in the legal entity (if any) that would have applied for credit.

71.     As alleged herein, Defendant made written statements (in its 2016 FDD and 2017 FDD) to Plaintiff and all other members of the Class that a spousal guaranty of credit was mandatory.

72.     Defendant's written statements, as alleged herein, discouraged Plaintiff and all other members of the Class from applying for credit.

73.     Defendant's written statements, as alleged herein, would discourage a reasonable person from applying for credit.

74.     Defendant's discouragement of credit applications was on a "prohibited basis" within the meaning of 12 C.F.R. § 1002.2(z).

75.     Plaintiff alleges upon information and belief that Defendant had no standards of creditworthiness with respect to Plaintiff or any other member of the Class since, with respect to all such persons, Defendant's affiliate, Huntington Learning Center, extended credit.

76.     Plaintiff alleges upon information and belief that, with respect to Plaintiff and the other members of the Class, Defendant did not make any individualized inquiry as to the creditworthiness of applicants.   As the 2016 FDD and 2017 FDD plainly state, Defendant required spousal guarantees from every married applicant—regardless of non-marital income or assets.

77.     Plaintiff and all other members of the Class were prospective applicants for secured credit.

78.     Defendant could not have reasonably believed a guaranty from the spouse(s) of Plaintiff or the other members of the Class was necessary under applicable state law for the Collateral to be available to satisfy any debt in the event of default.  Even if any of the Collateral could be considered marital property subject to equitable division in the event of a divorce

action, all of the Collateral would nonetheless be subject to the Lender's priority security interest pursuant to the terms of the Security Agreement.

79.    Plaintiff seeks, individually and on behalf of the members of the Class, and is entitled to recover, permanent equitable relief to enforce the ECOA pursuant to 15 U.S.C. § 1691e(c); specifically, a permanent injunction prohibiting Defendant from making oral or written statements, in advertising of otherwise, to prospective applicants for credit that a spousal guaranty of same is required, regardless of the prospective applicant's creditworthiness, less and except where the prospective applicant's spouse (a) jointly applied for such credit; (b) has an ownership interest in the legal entity (if any) that applied for credit; (c) would have been governed by the laws of Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Texas, Washington or Wisconsin in a putative divorce proceeding at the relevant time; or (d)  has an interest in any collateral such that Defendant could reasonably believe a spousal guaranty was necessary under applicable state law for the collateral to be available to satisfy any debt in the event of default.

80.    Plaintiff seeks, individually and on behalf of the members of the Class, and is entitled to recover, the costs of this action together with a reasonable attorney's fee as determined by this Court pursuant to 15 U.S.C. § 1691(d).

81.    Plaintiff seeks, individually and on behalf of the members of the Class, and is entitled to recover, statutory punitive damages from Defendant in an amount not greater than the lesser of $500,000 or one percent of said Defendant's net worth pursuant to 15 U.S.C. § 1691a(b).

82.     Defendant's failures to comply with the ECOA are frequent and persistent. Defendant's 2016 FDD and 2017 FDD show a pattern and practice of requiring spousal guarantees from the spouses of putative franchisees simply by virtue of their marital status.

83.     Defendant is well-resourced.  Financial disclosures made in the 2016 FDD reveal that Defendant had $7,211,886 in assets and only $787,413 in liabilities as of December 31, 2016.

84.     Defendant's failures to comply with the ECOA was, at a minimum, negligent, and Plaintiff reserves the right to amend this allegation to allege specific intent in the event discovery uncovers evidence of same.

85.     The ECOA and the regulations promulgated thereunder, including, but not limited to, 12 C.F.R. § 1002.4(b), are intended to protect a concrete interest—the availability of credit on a non-discriminatory basis.  Defendant's violations of the ECOA, as alleged herein, harmed that interest because the Plaintiff and the other members of the Class were denied, by being reasonably discouraged from applying for, credit because of their marital status.  Alternatively, Defendant's violations of the ECOA, as alleged herein, present a material risk of harm to that interest of Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

86.     WHEREFORE, premises considered, Plaintiff requests the Court:

(a)     Determine that this action is a proper class action, designate Plaintiff as the representative of the Class, and designate undersigned counsel as Class counsel;

(b)     Enter judgment on Count I against Defendant and (i) permanently enjoin Defendant from further violations of the ECOA; (b) award the members of the Class the costs of this action together with a reasonable attorneys' fee; and (c) assess statutory punitive damages

against Defendant in an amount up to but not greater than the lesser of $500,000 or one percent of Defendant's net worth; and

(c)    Award Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable pursuant to Federal Rule of Civil Procedure 38.

Dated: <u>December 20, 2017</u>

<u>/s/ *Robert J. Cahall*_____</u>
**ROBERT J. CAHALL**
Delaware Bar No. _5597___

**MCCORMICK & PRIORE, P.C.**
1000 North West St.
Suite 1200
Wilmington, Delaware
302.295.4895
302.295.4801 (F)
rcahall@mccormickpriore.com

*Attorneys for Plaintiff*

**CARY ICHTER**
Georgia Bar No. 382515
(*pro hac vice* admission pending)

**WILLIAM DANIEL DAVIS**
Georgia Bar No. 746811
(*pro hac vice* admission pending)

**ICHTER DAVIS LLC**
3340 Peachtree Rd. NE, Suite 1530
Atlanta, Georgia 30326
404.869.7600
404.869.7610 (F)
cichter@ichterdavis.com
ddavis@ichterdavis.com