IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HERMAN DHADE, as an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HUNTINGTON LEARNING CENTERS, INC.<br><br>Defendant. | Civil Action No. 17-1834-CFC |

Robert J. Cahall, MCCORMICK & PRIORE, P.C., Wilmington, Delaware; Cary Ichter, ICHTER DAVIS LLC, Atlanta, Georgia; William Daniel Davis, ICHTER DAVIS LLC, Atlanta, Georgia

*Counsel for Plaintiff*

Robert J. Katzenstein, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware; Scott McIntosh, QUARLES & BRADY LLP, Washington, D.C.

*Counsel for Defendants*

**MEMORANDUM OPINION**

October 9, 2019
Wilmington, Delaware

_____
CONNOLLY, UNITED STATES DISTRICT JUDGE

Plaintiff Herman Dhade filed this putative class action on behalf of himself and all others similarly situated against Defendant Huntington Learning Centers, Inc. (Huntington). The single count of Dhade's complaint alleges that Huntington violates the Equal Credit Opportunity Act (ECOA), 15 U.S.C. § 169 *et seq.* That act creates a private right of action for applicants for credit.

Huntington has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.I. 7. In support of its motion, it argues, among other things, that because Dhade alleges he is a prospective applicant and not an applicant for credit, the complaint fails to state a claim upon which relief can be granted and Dhade lacks standing. I agree that the ECOA's private right of action only covers applicants and not prospective applicants. Accordingly, I will grant Defendant's motion to dismiss with prejudice.

# I. BACKGROUND[1]

Huntington is a Delaware corporation that sells Huntington Learning Center® franchises. D.I. 1 at ¶ 3. These franchises offer tutoring and test preparation services to customers. D.I. 1 at ¶ 3. Dhade applied to Huntington on April 5, 2017 for two franchises in Michigan. D.I. 1, ¶ 25; D.I. 5-2 at 2. In his application, Dhade answered "yes" to the question: "Would you like to discuss our in-house financing option with us?" D.I. 1, ¶ 27.

The next day, Huntington provided Dhade a package that contained a Franchise Agreement, numerous related contracts, and a franchise disclosure document (FDD). D.I. 1 at ¶ 28; D.I. 5-1. The FDD identified six "risk factors" for Dhade to "please consider ... before buying this franchise." D.I. 5-1 at 3. Risk factor number six read:

> THE FRANCHISEE'S SPOUSE MUST SIGN A PERSONAL GUARANTEE MAKING SUCH SPOUSE JOINTLY AND SEVERALLY LIABLE FOR THE OBLIGATIONS UNDER THE FRANCHISE AGREEMENT, WHICH ALSO PLACES THE SPOUSE'S PERSONAL ASSETS AT RISK. YOU MAY WANT TO CONSIDER THIS WHEN MAKING A

---

[1] The parties agree that Huntington's 12(b)(1) lack-of-standing argument presents a facial attack on Dhade's claim and that I should apply to that argument the same legal standard that governs Rule 12(b)(6) motions. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). Accordingly, in considering Huntington's motion, I accept as true all factual allegations in the complaint and view those facts in the light most favorable to Dhade. *See Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

2

DECISION TO PURCHASE THIS FRANCHSIE OPPORTUNITY.

*Id.* A copy of the personal guarantee, titled "Guarantee Agreement," was attached as Exhibit A to the Franchise Agreement. The Guarantee Agreement obligated each of its signatories to be "bound by, and perform according to, each and all of the provisions, covenants, and conditions of the Franchise Agreement and this Guarantee[.]" *Id.* at 127.

In "Item 10" of the FDD, titled "Financing," Huntington disclosed that new franchisees in Michigan and all states other than California could borrow from Huntington's affiliate, Huntington Learning Corporation, up to $100,000 for working capital and opening expenses. *Id.* at 22. Item 10 also provided in relevant part:

> If you obtain financing from [Huntington Learning Corporation], you must sign [Huntington Learning Corporation's] negotiable promissory note (the "Promissory Note") in the form attached as Exhibit S and the security agreement (the "Security Agreement") in the form attached as Exhibit T. Each of borrower's partners, shareholders, and members must personally guarantee the Promissory Note by signing the promissory note guarantee ("Promissory Note Guarantee") in the form attached as Exhibit U. The Security Agreement provides that financing will be secured by the Franchise Agreement, related agreements, and all Franchised Business assets.

*Id.* at 23.

3

On April 26, 2017, Huntington sent Dhade a document titled "Huntington Learning Center In-House Financing" and a Huntington Learning Corporation form for Dhade to complete titled "Request for Huntington Financing." D.I. 1, ¶ 29; D.I. 5-3 at 1, 5. In an email sent to Huntington two days later, Dhade stated that his spouse "will not be involved in the business" and therefore asked if "she still need[ed] to sign" the personal guarantee. D.I. 1, ¶ 31. Huntington responded that same day: "Yes, she will need to sign absolutely." *Id.* ¶ 32.

In June 2017, Dhade emailed Huntington a "Request to be Awarded a Huntington Learning Center Franchise." D.I. 5-5 at 1. In his franchise request, Dhade stated that the purchasers of the franchises would be two companies he wholly owned, Fluffy Bunny, Inc. and Purple Butterfly, Inc. D.I. 5-5 at 1; D.I. 1, ¶ 34. Dhade also emailed Huntington "a request to remove my spouse from the personal guarantee." D.I. 5-5 at 1. In response to these requests, Huntington sent Dhade a proposed limited guarantee that capped the amount of his spouse's potential monetary obligations. D.I. 1 at ¶ 38. Dhade's spouse refused to sign this limited guarantee, and, "as a result," Dhade "withdrew his application for a Huntington Learning Center® franchise and did not submit the 'Request for Huntington Financing.'" D.I. 1 at ¶ 39.

Dhade seeks in his complaint injunctive relief and damages for himself and a putative class for alleged violations of the ECOA. Dhade alleges that he and all

4

other members of the putative class are entitled to relief under the ECOA because they are "prospective applicants within the meaning of 12 C.F.R. §§ 1002.2(3) and 1002.4(b)." *Id.* ¶ 66. Dhade further alleges that Huntington is liable under § 1691e of the ECOA because Huntington's spousal guarantee requirement (1) is prohibited by 12 C.F.R. § 1002.7(d)(1), D.I. 1, ¶ 59; and (2) "discourage[s] on a prohibited basis a reasonable person from making or pursuing an application" for credit in violation of 12 C.F.R. § 1002.4(b), D.I. 1, ¶ 60.

## II. LEGAL STANDARDS

To state a claim upon which relief can be granted a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but the complaint must set forth enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering Rule 12(b)(6) motions to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to plaintiffs. *Umland*, 542 F.3d 59 at 64.

## III. DISCUSSION

Huntington makes a number of arguments in support of its motion to dismiss, but I need only address its primary contention—namely, that Dhade is not entitled to relief under the ECOA because, by his own admission, he was never an applicant for credit. I agree that Dhade's failure to allege that he was an applicant for credit requires dismissal of his complaint under both Rule 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim upon which relief can be granted.

Section 1691e of the ECOA creates a private right of action for individual and class actions. Section 1691e(a) provides: "Any creditor who fails to comply with any requirement imposed by this subchapter shall be liable to the *aggrieved applicant* for any actual damages sustained by such applicant acting either in an individual capacity or as a member of a class." § 1691e(a) (emphasis added). The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). The statutory definition accords with the ordinary meaning of applicant, which is "a person who applies for employment, help, etc." *Applicant*, Webster's New World College Dictionary (5th ed. 2016).

"There is nothing ambiguous about 'applicant.'" *Moran Foods, Inc. v. Mid–Atlantic Mkt. Dev. Co., LLC*, 476 F.3d 436, 441 (7th Cir. 2007). "The plain language of the ECOA unmistakably provides that a person is an applicant only if she requests credit." *Hawkins v. Cmty. Bank of Raymore*, 761 F.3d 937, 941 (8th Cir. 2014) (quotation marks and citation omitted), *aff'd per curiam by an equally divided Court*, 136 S.Ct. 1072 (2016). In this case, Dhade alleges that he "withdrew his application for a Huntington Learning Center® franchise and did not submit the 'Request for Huntington Financing.'" D.I. 1 at ¶ 39. Moreover, Dhade does not allege that he submitted to Huntington Learning Corporation the Promissory Note, Security Agreement, or Promissory Note Guarantee discussed in Item 10 of the FDD. Thus, although Dhade was an applicant for a Huntington franchise, he was never an applicant for credit and does not have a private right of action under the ECOA. *Accord Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 707–8 (5th Cir. 2017), *cert. denied* 138 S. Ct. 421 (2017). Nor do any members of the putative class have a private right of action under the ECOA because, as Dhade alleges in his complaint, they are only "prospective applicants," not applicants. D.I. 1 at ¶¶ 41, 66.

Dhade argues that I should extend the ECOA's definition of "applicant" to cover a "prospective applicant" because 12 C.F.R. § 1002.4(b), promulgated by the Consumer Financial Protection Bureau (CFPB) pursuant to the ECOA, prohibits a

7

creditor from making any statement "to applicants or prospective applicants that would discourage on a prohibited basis a reasonable person from making or pursuing an application." This argument fails for three reasons. First, § 1002.4(b) does not change the definition of "applicant," let alone expand the definition to include "prospective applicant"; on the contrary, the use of the disjunctive "or" in § 1002.4(b) makes clear that the CFPB draws a distinction between "applicants" and "prospective applicants." Second, the ECOA vested the CFPB with enforcement powers that are more expansive than the private right of action authorized by § 1691e(a). *Compare* § 1691c *with* § 1691e. Thus, it makes sense that the CFPB would promulgate regulations that extend to parties not covered by the ECOA's private right of action. Third, even if § 1002.4(b) could somehow be read as evidence that the CFPB intended to expand the definition of "applicant," courts only defer to an agency's interpretation of a statute when the text of the statute is ambiguous. *Fair Hous. Rights Ctr. in Se. Pennsylvania v. Post Goldtex GP, LLC*, 823 F.3d 209, 214 (3d Cir. 2016). "If the intent of Congress is clear, that is the end of the matter." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Without statutory text making clear Congress's intent to authorize a private right of action for prospective applicants, a cause of action for prospective applicants "does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the

statute." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). In this case, the text of the ECOA is unmistakably clear that only applicants are covered by its private right of action.

Dhade also points to 12 C.F.R. § 1002.7(d)(1) as further justification for extending § 1691e's private cause of action to cover his alleged claim. That section provides in relevant part that "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." Thus, § 1002.7(d)(1)—like § 1691e(a)—applies only to applicants for credit. Since Dhade alleges in his complaint that he never applied for credit, § 1002.7(d)(1) has no bearing on the sufficiency of his claim or his standing to bring this suit.

Finally, I reject Dhade's assertion that the Third Circuit in *Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004) "recognized[ ] [that] prospective credit applicants have a private right of action under the ECOA." D.I. 10 at 12. Dhade argues that the court in *Chiang* "affirmed, in part, certification of a class of both applicants *and attempted applicants* for credit asserting claims under the ECOA." D.I. 10 at 12 (emphasis in the original). He reasons that if attempted applicants have a private right of action then prospective applicants should have a private right of action.

Assuming for argument's sake that attempted applicants and prospective applicants are the same thing, *Chiang* does not help Dhade. First, although the plaintiffs' claims in *Chiang* arose "primarily under" the ECOA, *Chiang v. Veneman*, 385 F.3d 256, 259 (3d Cir. 2004), the complaint in question included alleged violations of the Fair Housing Act, the Administrative Procedure Act, and the Fourteenth Amendment of the Constitution, *see Chiang v. Veneman*, 213 F.R.D. 256, 258 (D.V.I. 2003), *aff'd in part, vacated in part* 385 F.3d 256 (3d Cir. 2004). Accordingly, the class ultimately certified by the Third Circuit in *Chiang* was not limited to credit applicants or attempted credit applicants but instead covered

> [a]ll Virgin Islanders who applied or attempted to apply for, and/or received, housing credit, services, home ownership, assistance, training, and/or educational opportunities from the USDA through its Rural Development offices (and predecessor designations) located in the U.S. Virgin Islands at any time between January 1, 1981 and January 10, 2000.

*Chiang*, 385 F.3d at 274. Given the variety of claims at issue in *Chiang*, it would be a stretch to say that by certifying this class the Third Circuit implicitly recognized that "attempted applicants" have claims under the ECOA.

Second, and more importantly, to the extent *Chiang* addresses the elements of ECOA, it calls for the dismissal of Dhade's complaint. The court in *Chiang* expressly stated that to establish a *prima facie* case under the ECOA a plaintiff

10

"must show," among other things, that he "applied for credit from defendants" and "was denied credit." *Id.* at 259. That holding is entirely consistent with the language of § 1691e and precludes Dhade—who neither applied for nor was denied credit—from asserting a private cause of action under the ECOA.

## IV. CONCLUSION

Dhade's single claim is for a violation of the ECOA. D.I 1 ¶¶ 57–85. Because Dhade and the proposed class members were not applicants within the meaning of the ECOA, they do not have a private right of action under the ECOA. Therefore, Dhade and the proposed class members lack standing, and the complaint fails to state a claim upon which relief can be granted. Accordingly, I will grant Huntington's motion to dismiss the complaint with prejudice.[2]

The Court will issue an Order consistent with this Memorandum Opinion.

---

[2] "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Where, as here, leave to amend would be futile, dismissal with prejudice is appropriate.